THE BALCARRES BROOK.

BALCARRES BROOK STEAMSHIP CO., Limited, v. GRACE et al.

(District Court, S. D. New York. February 4, 1895.)

CHARTER PARTY—CONSTRUCTION—GUARANTY OF CAPACITY. ·
   By the charter of an absent vessel for a lump sum for the voyage, the owners guarantied "that steamer will carry under deck at least 3,000 measurement tons of 40 cubic feet, failing which cargo capacity, charterers shall be allowed a concession of 30 shillings sterling for every ton short carried of said stipulated minimum capacity." There was no other specification of the cargo than that it should be "lawful merchandise." The charterers loaded a miscellaneous cargo, which being well stowed was 607 tons short of 3,000 tons, according to estimates of the measurements of the cargo; and they claimed an abatement for the alleged shortage. *Held*, following English decisions, that such a guaranty was a guaranty of the ship's cargo capacity only; i. e. of available cargo space, reckoning 40 cubic feet of space to the ton,—in this case, 120,000 cubic feet,—and was not a guaranty of the amount of such particular cargo as the charterer might elect to put on board.

This was a libel by the Balcarres Brook Steamship Company, Limited, against William R. Grace and others, for freight alleged to be due.

Convers & Kirlin, for libelant.

William L. Turner, for respondents.

BROWN, District Judge. The libelant steamship company, owner of the steamer Balcarres Brook, claims an unpaid balance of $4,417.42 alleged to be due for the hire of the steamer under a charter dated May 26, 1892.

The charter was for a voyage to carry lawful merchandise from New York to port or ports on the west coast of South America not north of Callao, and the respondents agreed to pay therefor:

"A lump sum of £4.500 sterling; owners guaranty that steamer will carry under deck at least three thousand (3,000) measurement tons of forty (40) cubic feet, failing which cargo capacity charterers shall be allowed a concession of thirty shillings (30) sterling for each and every ton short carried of said stipulated minimum capacity."

The kind of cargo was not referred to in the charter except that it was to be "lawful merchandise." A miscellaneous cargo of lawful merchandise, well stowed, was put on board, which, as partly measured and partly estimated, amounted to only 2,393 tons. The difference between the estimated space and the actual space required by different kinds of cargo sometimes amounts, according to the evidence, to as much as 35 per cent. The respondents claimed a deduction of 30 shillings per ton on the short stowage of 607 tons, contending that the guaranty clause of the charter meant, that the ship should be able to stow 3,000 tons of actual cargo; and they refused to pay for more than was loaded. The libel was filed to recover the unpaid balance of the £4,500.

Clauses in charter parties, similar to the one in question, have been repeatedly discussed in the English courts, and the construction uniformly given to them has been, that they guaranty cargo capacity only, and not that the vessel shall load a specified amount of such particular kind or condition of cargo, as the charterer may elect to put on board. The reason is that the opposite construction would put the owner at the mercy of the charterer; since different kinds of cargo, even within the range of estimated "measurement," differ as much as 35 per cent. in compactness of stowage; and that would make the owner's compensation for the use of his ship wholly uncertain, and dependent on the kind or condition of cargo afterwards selected by the charterer at his option. Such a construction is deemed unreasonable, and presumably contrary to the intent of the parties. Mackill v. Wright, 14 App. Cas. 106; Pust v. Dowie, 5 Best & S. 20; Carnegie v. Conner, 24 Q. B. Div. 45.

The agreement here in effect is, not that the ship shall stow 3,000 measured tons of cargo; but only that she carries a cargo capacity of 3,000 measurement tons, reckoning 40 feet of space to a ton.

The use of the word "carry" does not change this construction, for it is "cargo capacity" only that the ship is warranted to carry. The case last cited of Carnegie v. Conner, is stronger than the present against the respondent; since there not only was the same word "carry" employed, but the general nature of the cargo to be carried was specified. Here there was no agreement, or understanding, as to the kind or nature of the cargo to be carried. As no American authorities are cited to the contrary of the English cases, and as those cases seem to be based on reasonable grounds, and to be compatible with the language of the present charter, they will be followed here.

The telegrams throw no new light on the intent of the charter clause. Defendants' counsel, in his argument, inverts the order of the two telegrams of the 26th, as shown in the stenographer's notes. The London agent always struck out the word "cargo," showing that he intended cargo space, or capacity, as the charter itself reads.

The cesser clause is not a defense, for the reasons stated in the recent case of Burrill v. Crossman, 65 Fed. 104.

The intent of the warranty, as I therefore find, was to guaranty a certain cubic space under deck to be available for cargo, i. e. for 3,000 measurement tons, reckoning 40 cubic feet of space to the ton.

The libelant contends that this amount of space was furnished; but I find the evidence on that point so unsatisfactory and inconclusive, that that question must be referred to a commissioner to take further proof and report thereon. Mr. Hall, for the defendant, had no memorandum of his measurements in cubic feet. The master's cross-examination throws doubt on his testimony as to the available cargo space, through inconsistent statements; while the only other witness that gives legal testimony on the subject, Mr. Roberts, does not state whether he did or did not deduct the space of about 300 tons which was used for fuel. The defendant is entitled to a deduction at the rate specified for the deficiency, if any, of available cargo space, below 120,000 cubic feet.

An order of reference may be taken to ascertain the available space, if not agreed upon.